## STANDARD SCALE & SUPPLY CO. v. REITER.

(Circuit Court of Appeals, Seventh Circuit. October 5, 1915.)

### No. 2161.

1. EVIDENCE ☜441—PAROL EVIDENCE TO VARY WRITING.

A contract by which plaintiff was employed as general manager of defendant's branch store contemplated the establishing of side lines to be handled by such store, but did not specify which party was to do this. It was claimed that plaintiff represented that he would be able to sell a certain amount of goods in such side lines, but no promise to do so was included in the contract, and it appeared that plaintiff distinctly refused to have it included. *Held* that, while evidence that it was intended by the parties that the establishing of side lines should be within the duties of the general manager was admissible, evidence of a distinct, separate promise to sell a certain amount of goods was inadmissible, and there was no specific obligation on plaintiff to produce any specific volume of business.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1719, 1723–1763, 1765–1845, 2030–2047; Dec. Dig. ☜441.]

2. MASTER AND SERVANT ☜50—CONTRACTS OF EMPLOYMENT—CONSTRUCTION.

A contract by which plaintiff was employed as manager of defendant's branch store recited that defendant was to open a branch house for the sale of its scales and other goods, "such as" gasoline engines and others mentioned, followed by "etc." There was evidence that it was intended by the parties that the establishing of these side lines should be a part of the manager's duties. *Held*, that there was no requirement, in the sense of a specific obligation, to establish any specific number of side lines, and the court properly so charged.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 64; Dec. Dig. ☜50.]

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois; J. Otis Humphrey, Judge.

Action by Edward Reiter against the Standard Scale & Supply Company. Judgment for plaintiff, and defendant brings error. Affirmed.

This cause was reversed on the former hearing thereof, for the reason that the trial court excluded evidence tendered for the purpose of showing what were the duties of defendant in error as general manager under the terms of the contract between the parties, and not for the purpose of altering the legal effect of that contract. For contract and opinion, see 199 Fed. 91, 120 C. C. A. 141. On the retrial in the District Court, all the competent evidence offered to show what was the scope of the manager's duties was admitted, together with evidence of all that was said between the parties before the contract was signed, and of all that was done and left undone by defendant in error under the contract, tending to show whether or not he was competent, and whether or not he performed his duties with energy, skill, and ability, and had complied with the contract. This evidence was in substance the

---

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

same as that tendered on the first hearing. There was no question of fraud raised in procuring the contract.

It is the contention of plaintiff in error that the representations of defendant in error, made prior to the signing of the contract, as to what he thought he could do and what results he could attain, be, in substance, declared to be a part of the contract and of defendant in error's duties as general manager. It is in evidence, also, that at the time of the execution of the contract plaintiff in error sought to have said representations incorporated in the instrument and made conditions binding upon defendant in error, but that the latter refused to sign such a contract, claiming that he was tying himself up for eight years, and that both parties must take their chances. The enterprise proved a failure, largely because of defects in the scales supplied by plaintiff in error, it is claimed by defendant in error. Thereupon plaintiff in error declined to pay to defendant in error the salary reserved in the contract, and the latter brought this suit to recover the same, resulting in a verdict of $11,000 in favor of defendant in error, as set out in said former appeal.

At the close of the evidence herein the court proceeded to charge the jury, the following portion of which charge is assigned for the first ground of error herein: "I have already said that neither the jury nor the court can change this contract, or make any different contract between the parties than the one they have made for themselves. I have allowed evidence to go to the jury tending to show what were to be the duties of this man as general manager, and you have heard from that evidence that his duties were to organize and establish a branch house for the defendant in Chicago. Now, there is nothing in the contract which would require him to attain any particular result; no requirement for profit; no requirement for any particular volume of business; no requirement for establishing any number of side lines. The requirement eked out of the oral testimony as adduced as to his duty in the final analysis was that he should in good faith exercise reasonable care and diligence and skill to do these things."

The second assignment of error is the refusal of the court to charge the jury as follows: "That if they find from the evidence that the plaintiff was employed by the defendant as general manager to organize and establish a branch house here in the city of Chicago for the sale of scales, and for the sale of other manufactured articles, not manufactured by the defendant, and that the plaintiff represented to the defendant that he was skilled in the sale of merchandise other than that manufactured by the defendant, and that he would obtain representation for these various articles mentioned by him to them, and which are mentioned in the contract, and that the volume of business which was to be done by him in these side lines would be not less than $200,000 a year, and that the defendants were ignorant as to these side lines, and believed that the plaintiff had the capacity to do as he promised, and, relying upon this, entered into the contract, and that, instead of establishing a branch house with the sale of $200,000 a year of merchandise outside of that manufactured by the defendant, only sold an amount less than $15,000 a year, then the plaintiff has not complied with his contract, and the defendant has a right to discharge him."

The jury rendered a verdict of $7,000 in favor of defendant in error, and judgment was entered thereupon accordingly.

W. S. Oppenheim, of Chicago, Ill., for plaintiff in error.

Edwin M. Ashcraft, of Chicago, Ill., for defendant in error.

Before BAKER, KOHLSAAT, and MACK, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above).    [1] There is no suggestion in the opinion of this court in the former hearing of this case to the effect that conferences and communications with reference to the amount of business to be done, had previous to the signing of the contract in question, were competent, either to vary the

terms of the contract or to show what were the duties of the general manager. The contract contemplated that somebody should attend to the establishing of the side lines. It did not specify which of the parties was to do this. As this could properly fall within the duties of a manager, if so intended by the parties, evidence to show that they did so intend was admissible; but evidence of a distinct, separate promise to sell a certain amount of goods would be inadmissible, as bringing into the contract a new obligation, and one which Reiter had distinctly refused to have written therein.

[2] It is to be noted that the agreement did not provide that certain side lines and others unmentioned were to be established, but only that "such branch lines as," and then mentioning certain ones and adding thereafter "etc." The court stated that he had allowed evidence to go in showing what were the duties of this man as general manager, and that they were to organize and establish a branch house; that there was no requirement to attain any particular result, no requirement for profit, for any particular volume of business, for any number of side lines; that he should in good faith exercise reasonable care and diligence and skill to do these things.

The exception was "to the last instruction that there is no provision in the contract requiring him to establish any particular business, or any particular volume of business, and we will ask the court to instruct" that if defendant in error represented that he would obtain representation for these various articles mentioned in the contract, and that the volume would be not less than $200,000 a year, and that the contract was made in reliance on this, and he actually sold less than $15,000, then there was a right of discharge. The exception and the request must be read together, and they show that plaintiff in error's theory is that these alleged representations as to every article mentioned in the contract and as to the amount of business to be done were binding obligations. There was no error in charging that there was no requirement in the sense of specific obligation to establish any specific number of side lines or produce any specific volume of business. The oral testimony was not admitted for this purpose, and was not directed, in the former opinion, to be admitted for this purpose, but only for the purpose of showing in a general way the duties of the manager, or perhaps, also, the relative duties of manager and owner. This being so, there was no obligation to produce $200,000 worth of business, and, of course, the instruction asked for is clearly wrong.

We find no error in the judgment of the District Court, and the same is therefore affirmed.